STATE, Respondent, vs. INDUSTRIAL COMMISSION and another, Appellants.

*January 22—February 25, 1947.*

*Kathryn H. Baldwin* of Madison, for the appellant Industrial Commission.

For the respondent there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

ROSENBERRY, C. J.   For three years prior to September, 1941, the defendant was a student at the University of Wisconsin, registered in the letters and science school for the work which is prerequisite to the nursing course.   In that month she entered the Wisconsin General Hospital for clinical work in nursing.   For the certificate of registered nurse there is required twenty-seven months of clinical nursing training in residence at the hospital.   This clinical work consists of certain instructions in theoretical studies and from thirty to forty-two hours of ward work a week in the hospital.

The defendant registered in the university for four consecutive semesters,—September, 1941, January, 1942, September, 1942, and January, 1943.   She was not registered in the university in September, 1943, which was the semester during which she contracted the disease which caused her disability, although she was still working in the hospital at the clinical part of her training, which was completed in February, 1944.   During this period she had no classes; her work was entirely floor ward duty.   She paid no dues to the university for the four semesters, 1941, 1942, and 1943, because during this period her fees were remitted by the Regents of the University of Wisconsin.   In addition, the hospital furnished her room, board, and laundry, and she lived in the nurses' home, a dormitory maintained by the Wisconsin General Hospital. She received a certificate as graduate nurse on February 23, 1944.   She was placed on the civil-service list February 27, 1944, and continued to work for the Wisconsin General Hospital until she resigned her employment on June 17, 1944. Medical evidence indicates that she contracted tuberculosis while a student nurse at the state sanatorium, affiliated with the Wisconsin General Hospital.   The defendant filed a claim for compensation with the commission.

As already stated, the commission awarded compensation, and the question here is whether the defendant was an employee of the state of Wisconsin and as such entitled to compensation.   The trial court set aside the award on the ground

that the defendant was not an employee of the state; that the relation between the defendant and the state was that of a student in an educational institution provided by the state.

The commission and the defendant rely very heavily upon *Employers Mut. L. Ins. Co. v. Industrial Comm.* (1940) 235 Wis. 270, 292 N. W. 878. In that case a student nurse was rendering service to the St. Mary's Hospital and claimed compensation for injuries sustained in an accident while she was performing service growing out of and incidental to her employment. The circumstances of these two cases are very similar.

However, there is one fact which distinguishes this case from all the cases cited to us, and that is, in this case the state of Wisconsin is sought to be held as an employer. In the cases cited the employer was a private employer. Sec. 102.07 (1), Stats. 1945, provides:

" 'Employee' as used in this chapter means:

"(1) Every person, including all officials in the service of the state, or of any municipality therein whether elected or under any appointment, or contract of hire, express or implied. . . ."

The defendant was neither elected nor appointed to an official position or an employment, and if she was within the statute it was because she was under contract of hire. In this case there is no contention that there was an express contract.

The argument in support of the defendant's position, reduced to its lowest terms, is that she was rendering service for the state of Wisconsin for which she was compensated by the remission of her dues and furnished board, room, etc.; that because of this relationship there was an implied contract of hire. Neither party was required to render any service to the other for which they had agreed upon any compensation.

By sec. 16.02 (2), Stats., civil service is defined to mean—

"all offices and positions of trust or employment, including mechanics, artisans and laborers, in the service of the state, except offices and positions in the organized militia."

If the defendant was an employee she was in the civil service of the state. Sec. 16.27, Stats., provides:

"(1) Neither the secretary of state, nor other fiscal officer of this state, shall draw, sign or issue, or authorize the drawing, signing or issuing of any warrant on the treasurer or other disbursing officer of the state; nor shall the treasurer or other disbursing officer of the state pay any salary or compensation to any person in the service of the state, unless an estimate, pay roll or account for such salary or compensation containing the names of every person to be paid, shall bear the certificate of the director that the persons named in such estimate, pay roll, or account have been appointed, employed, reinstated or promoted as required by law and the rules established thereunder and that the salary or compensation is within the salary ranges fixed pursuant to section 16.105. . . .

"(3) Any sums paid contrary to the provisions of this section may be recovered from any officer or officers making such appointments in contravention of the provisions of law or of the rules made in pursuance of law, or from any officer signing or countersigning or authorizing the signing or countersigning of any warrant for the payment of the same, or from the sureties on the official bond of any of said officers, in an action in the circuit court of any county within the state, maintained by the director or the personnel board or by any member thereof, or by a citizen resident therein, who is assessed for, and liable to pay, or within one year before the commencement of the action has paid, a state, city or county tax within this state. . . ."

Sec. 16.29 (1), Stats., provides: "All officers of this state shall conform to, comply with and aid in all proper ways in carrying into effect the provisions of sections 16.01 to 16.30, and the rules prescribed thereunder.

"(2) No appointing officer shall select or appoint any person for appointment, employment, promotion or reinstatement, except in accordance with the provisions of sections 16.01 to 16.30, and the rules prescribed thereunder. . . ."

By virtue of the civil-service act no person can become an employee of the state except in accordance with the provisions of that act.

Sec. 348.269, Stats., provides that one who makes an appointment to office, or selects a person for employment contrary to the provisions of the rule established, or wilfully refuses or neglects otherwise to comply with or conform to the provisions of secs. 16.01 to 16.30 (civil-service act), or violates any such provisions, shall be deemed guilty of a misdemeanor and, if convicted, shall lose his office and be made incapable of holding office for a period of five years from the date of the conviction.

By these statutory provisions the state has provided how one may become an employee of the state, which requires, in order for a valid appointment to be made, full compliance with the provisions of the civil-service law. These statutory provisions leave no room for a person to become an employee of the state under an implied contract of hire. There was no attempt made to comply with the civil-service act.

The state having prescribed with exactness how one may become an employee and prohibited employment except on compliance with the requirements of the statute, even if the services were of value and were accepted by the state, the person rendering them does not become an employee. Under the act one appointed contrary to its provisions may have a claim against the officer appointing him but he has none against the state. In the case of *Employers Mut. L. Ins. Co. v. Industrial Comm., supra,* which approached the limit in holding a party liable for services which were rendered as a part of the claimant's instruction, the alleged employer was not subject to the civil-service law which distinguishes this case from that case.

While in some cases municipalities have been held liable upon an implied contract where there was a failure to comply with the law respecting the making of the contract, we find no case and we are cited to no case where it has been held that a contract arises by implication where the statute prohibits the making of a contract of employment in any way other than in the way prescribed.

It is apparent that this statute was enacted for the purpose of preventing claims from arising against the state where its representative might have inadvertently accepted some service beneficial to the state.

We do not deem it necessary to consider other matters which tend to support the conclusion reached by the trial court.

*By the Court.*—Judgment affirmed.

BARLOW, J., dissents.